UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal No. 06-067 (PAM/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **JERRY NMN ROBINSON,** | |
| Defendant. | |

APPEARANCES

Omar Syed, Assistant United States Attorney, for Plaintiff United States of America

Nancy Vanderheider, Esq., for Defendant Jerry Robinson

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on April 3, 2006, on the pretrial motions of both the United States of America (the "Government") and Defendant Jerry Robinson. This matter is scheduled to be tried before the Honorable Paul A. Magnuson, United States District Court for the District of Minnesota, on May 1, 2006. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

I.     **INTRODUCTION**

An Indictment against defendant Jerry NMN Robinson ("Robinson") was handed down on February 22, 2006, and subsequently unsealed on February 24, 2006, charging Robinson with one count of embezzlement in violation of 18 U.S.C. § 656, and one count of bank fraud in violation of 18 U.S.C.

§ 1344. The Indictment also contains forfeiture allegations against the defendant. A Bench Warrant was issued on February 22, 2006. On February 23, 2006, the defendant was arrested and appeared before United States Magistrate Judge Mayeron who arraigned Robinson and set conditions for his release on a $25,000 bond.

Defendant Robinson was present and represented by counsel at the hearing on April 3, 2006. No witnesses testified, and the following three exhibits were entered into evidence:

1. Exhibit 1 - FBI 302 Report dated October 15, 2005, of defendant's interview by FBI Special Agents David Moldal and Benjamin R. Hruz;

2. Exhibit 2 - FBI 302 Report on the October 15, 2006, execution of a search warrant at a Farmington, MN residence, including a comment made by the defendant; and

3. Exhibit 3 - Copy of the Application for Search Warrant, supporting affidavit, and Search Warrant for Farmington, MN residence.

The parties stipulated to the factual record and raised no objections to the non-dispositive motions filed with the Court. This Court has addressed the parties' non-dispositive motions a separate Order. In this Report and Recommendation, the Court considers the dispositive motions filed by the Mr. Robinson.

## II. FINDINGS OF FACT

1. Defendant Jerry Robinson ("Robinson") was employed with the Wells Fargo Bank from March 15, 1999 to September 20, 2004. He became a suspect in this case when large amounts of cash disappeared on his watch as lead teller at one of the local branches.

2. To investigate this matter further, on October 14, 2004, the Federal Bureau of Investigation ("FBI") secured a search warrant for Robinson's residence.

3. The search warrant contained facts known to the FBI, which established at least probable cause to believe Robinson committed the crime of bank embezzlement and that evidence of the crime in the form of documents would be located in his residence.

4. This included allegations that Robinson worked as a lead teller with access to the Cash Dispense Machine, the bank vault and Robinson's cash drawer, when large amounts of cash disappeared. Electronic records as well as audits done at the bank established specific dates for the unaccounted funds. Robinson's name was attached to all of those transactions or losses. In addition, Robinson's behavior at the bank during these times was suspicious. Finally, the funds were insured by the FDIC.

5. During the morning hours of October 15, 2006, FBI Special Agents Benjamin Hruz and David Moldal interviewed Robinson at his residence.

6. The agents explained to Robinson that the agents were from the FBI and they wanted to speak with him about the missing bank funds. Robinson was told that he was not under arrest and that he did not have to speak with the agents.

7. The agents asked Robinson if he understood what they told him and whether or not he wished to speak to agents. Robinson said he understood and would answer the agents' questions.

8. Robinson proceeded to tell his side of the story to the agents and denied he stole any money. He had explanations for the transactions and records which implicated him in the embezzlement. In essence, he denied all the charges.

9. At the end of the interview, the agents asked Robinson if he wanted to take a polygraph test. Robinson indicated that he wanted a lawyer, because he was being falsely accused of stealing the money.

10. The agents told Robinson that he was not under arrest, was free to go and that the search warrant would now be executed. The search began at 9:00 am.

11. Robinson chose to stay for most of the search, but left around 10:30 am. When he left, he commented to agents to leave the house key under the front mat. He was not arrested that day.

### III. DISCUSSION

Robinson challenges the search for lack of probable cause as well as the admissibility of the statement to the agents as violation of his constitutional rights. The Court recommends that both motions be denied.

#### A. SEARCH WARRANT

A search warrant must be supported by probable cause to conduct a search or to seize evidence of a crime. U.S. Const. Amend IV. The Fourth Amendment requires that a neutral and detached magistrate determine whether law enforcement officers have probable cause to conduct a search. Warden v. Hayden, 387 U.S. 294, 301-302 (1967); United States v. James, 353 F.3d 606, 613 (8th Cir. 2003). Probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005).

Facts in a supporting affidavit must provide the issuing judge with a "substantial basis" to believe that a "fair probability" exists of finding evidence of a crime. Gates, 462 U.S. at 238-39. When a judge relies solely on an affidavit to issue a warrant, the judge may consider only information within the "four corners" of the affidavit. United States v. Wells, 347, F.3d 280, 286 (8th Cir. 2003). Courts reviewing a decision to issue a search warrant give great deference to the decision to issue the warrant and "due weight to inferences drawn" by issuing judges and local law enforcement. Ornelas v. United States, 517 U.S. 690, 699 (1996).

Based upon the four corners of the search warrant and affidavit presented in this case, there is probable cause to believe that contraband or evidence of the crimes alleged would be found at his residence. In other words, there is a sufficient showing by the government through the facts contained in the warrant, which makes it reasonable to search this defendant's home and seize items. The items sought were clearly the type of items,(documents, records and cash), that would remain at a person's house for a relatively lengthy period of time. Accordingly, this Court recommends that defendant's motion to suppress evidence taken in the search be denied.

### B. STATEMENT

To determine whether a statement violates due process, the inquiry is whether officers engaged in coercive conduct that, under the totality of the circumstances, was sufficient to overcome the free will of the defendant. *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004). Moreover, any time a person is taken into custody for questioning, a law enforcement officer must, prior to questioning, advise the individual of his right to be free from compulsory self-incrimination and his right to the assistance of counsel. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). To determine whether a statement violates

the privilege against self-incrimination, the relevant issues are whether the defendant is in custody, and if so, whether officers interrogated the defendant without an advance *Miranda* warning. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005).

### 1. Interview

Because the parties do not contest that the agents' interview was an interrogation, the critical issue is whether Robinson was in custody.[1] A defendant is in custody when that defendant is formally arrested or is restrained to a degree comparable to formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). To determine whether restraint is comparable to formal arrest, the inquiry is whether a reasonable person, under similar circumstances, would have understood the situation to be an arrest. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

In *United States v. Griffin*, the Eighth Circuit developed a nonexclusive six-factor test for evaluating whether a defendant is in custody. 922 F.2d 1343 (8th Cir. 1990). These factors are (1) whether the defendant was informed that questioning was voluntary and that the defendant was free to leave; (2) whether the defendant had freedom of movement during questioning; (3) whether the defendant initiated contact with authorities or voluntarily acquiesced to questioning; (4) whether officers employed coercive or deceptive tactics during questioning; (5) whether the atmosphere of questioning was dominated by officers; and (6) whether the defendant was arrested after questioning. *Id.* at 1349. The first three

---

[1] The nature of Robinson's statement calls into question whether he incriminated himself at all. He denied all the charges. However, to the extent the government might choose to use portions of the statement in its case-in-chief, a constitutional analysis is appropriate.

factors support a finding that the defendant was not in custody; the remaining three support a finding that the defendant was in custody. *Id.* at 1349.

Some recent decisions by the Eighth Circuit have criticized the use of the *Griffin* factors for determining custody. These decisions warn against the formulaic application of these factors, and instead emphasize scrutiny of the facts of each particular case. *See, e.g., United States v. Ollie*, — F.3d —, 2006 WL 829755 at *2 (8th Cir. 2006); *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). Other recent Eighth Circuit decisions, however, continue to apply the *Griffin* factors. *See United States v. Black Bear*, 422 F.3d 658, 662-63 (8th Cir. 2005); *United States v. Plummer*, 409 F.3d 919, 924-25 (8th Cir. 2005). Because the *Griffin* factors provide a meaningful framework for examining custody, it is useful to review them here.

When Robinson was interviewed, he was informed that he was free to leave, was not under arrest, and was not required to answer questions. The interview took place in a setting familiar to Robinson, his residence. And Robinson was not arrested after the interview ended. The agents executed a search warrant at the end of the interview, but he was informed of that fact at the end of the interview, was told he could leave and , in fact, he did leave the premises without police escort. There is no indication that coercive or deceptive tactics were used during questioning. Nor was there a violation of due process, in that the events here do not indicate that officers resorted to duress or coercion in order to overcome the free will of Robinson.

In other words, there is no indication that a reasonable person, in similar circumstances, would have understood the situation to be comparable to formal arrest. This outcome is consistent with other cases, where an interview took place with substantially greater restraints, but the court ruled that the defendant

7

was not in custody. *See Black Bear*, 422 F.3d at 622-23 (interview at stationhouse); *Plummer*, 409 F.3d at 925 (interview inside vehicle). Because Robinson was not in custody, the agents were not required to administer a *Miranda* warning and the privilege against self-incrimination was not violated. Consequently Robinson's statements at the interview need not be suppressed.

### 2. Execution of Search Warrant

The comment made while the search warrant was executed appears at first unimportant, but it might establish specific control over the documents found at the residence. Thus, the questions of custody and interrogation should be answered. When a defendant is detained incident to the execution of a search warrant, that detention ordinarily does not constitute formal arrest. *See Muehler v. Mena*, 125 S.Ct. 1465, 1472 (2005). Consistent with this principle, in the absence of further restraints, detention incident to execution of a search warrant is not custody for purposes of the privilege against self-incrimination. *See United States v. Axsom*, 289 F.3d 496, 502-03 (8th Cir. 2002). Further, whether a person is subject to interrogation depends on whether the police engage in express questioning or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291 (1980).

Here, there is no evidence in this record that any question by agents prompted the comment about where to leave the key. Moreover, while numerous agents were executing the search warrant, Robinson was free to go. He was not placed in handcuffs or arrested. He left the area when he wished. Accordingly, even if there was a question from an agent, Robinson was not in custody and the agents were not required to administer a *Miranda* warning. Any statements by Robinson did not violate his privilege against self-incrimination.

## IV. CONCLUSION

Accordingly, based upon all the files and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Physical Evidence Obtained as a Result of an Illegal Searches, Seizures, or Identification Procedures (Doc. #18) be **DENIED.**

2. Defendant's Motion for Discovery and Suppression of Confessions or Statements in the Nature of Confessions (Doc. # 19) be **DENIED.**

Dated: April 7, 2006                                    s/Jeanne J. Graham

                                                    JEANNE J. GRAHAM
                                                    U.S. Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by April 26, 2005. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.